**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA,

     Plaintiff,

     v.

EOS SURFACES, LLC,

     Defendant.

Case No. 2:25-cv-603

## OPINION & ORDER

Plaintiff Selective Insurance Company of South Carolina ("Selective") seeks a declaratory judgment that it does not have a duty to defend or indemnify Defendant EOS Surfaces, LLC ("EOS") against underlying state lawsuits under the terms of commercial general liability and umbrella policies. ECF No. 1 ¶¶ 1–4. EOS filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), or, in the alternative, requests a stay of this case pending resolution of litigation between the parties in California state court. ECF Nos. 15 (motion), 16 (memorandum). For the reasons stated herein, that motion will be **DENIED**.

## I.  BACKGROUND

At this stage the Court assumes the facts alleged in the complaint are true. Selective is a corporation organized under the laws of Indiana with its principal place of business in New Jersey. ECF No. 1 ¶ 5. Beginning in August 2013 and renewing annually through August 2017, Selective issued insurance policies to EOS, a Virginia-

based limited liability company that manufactures and distributes countertop surfaces. *Id.* ¶¶ 6, 10, 12, 23; ECF No. 16 at 2; ECF No. 16-1 ¶ 4.

Under the policies' commercial general liability coverage agreement, Selective has a duty to defend and indemnify EOS against suits seeking damages for bodily injury. ECF No. 1 ¶ 14; ECF Nos. 1-1 at 226 (2013–2014 policy), 1-2 at 162 (2014–2015 policy), 1-3 at 159 (2015–2016 policy), 1-4 at 159 (2016–2017 policy). Under the policies' exclusions, the insurance does not apply to bodily injury caused by (1) the inhalation of silica or silica-related dust, or (2) the dispersal, seepage, migration, release, or escape of "pollutants," which is defined as "any solid, liquid, gaseous or thermal irritant or contaminant." ECF No. 1 ¶¶ 15–17.

The policies also include commercial umbrella liability coverage under which Selective agrees to further defend and indemnify EOS when the underlying commercial general liability coverage limits have been exhausted. ECF No. 1 ¶¶ 18–20. The umbrella policy states that Selective will have the duty to defend EOS against any suit seeking damages when the underlying insurance does not provide coverage, but it also states that Selective will have no duty to defend EOS against any suit seeking damages for bodily injury to which the insurance does not apply. *Id.* ¶ 20. The umbrella coverage contains a pollution exclusion. *Id.* ¶ 21.

EOS is a named defendant in numerous, substantially similar lawsuits (hereinafter, "underlying lawsuits") in California state courts alleging lung damage caused by inhalation of stone dust and artificial stone dust, which contain silica and

other toxins and carcinogens.[1] ECF No. 1 ¶¶ 2, 23–27; ECF No. 1-5 (order granting petition for coordination of "Stone Countertop Worker Silicosis Cases"); ECF No. 1-6 (*de Los Santos* Complaint).

EOS provided Selective with notice of two of the underlying lawsuits,[2] seeking defense and indemnity. ECF No. 1 ¶ 28. Selective disclaimed coverage on the bases that (1) the general liability coverage policies' pollution and silica exclusions bar coverage, and (2) because the underlying limits had not been properly exhausted, there is no coverage under the umbrella policy. *Id.* Shortly thereafter, EOS notified Selective of six additional underlying lawsuits, contending that the silica and pollution exclusions do not bar coverage. *Id.* ¶ 29.

---

[1] *De Los Santos v. 1605578 Ontario Inc., et al.*, Orange County Superior Court Case No. 30-2024-01392209-CU-TT-CXC; *Jiminez-Morquecho v. 3M Company, et al.*, Los Angeles Superior Court Case No. 25STCV15952; *Figueroa De La Rosa v. 3M Company, et al.*, Los Angeles Superior Court Case No. 25STCV21712; *Rios v. Aaroha Radiant Marble & Granite Slabs, et al.*, Orange County Superior Court Case No. 30-2025-01467451; *Lopez v. All Natural Stone Burlingame, Inc.*, San Francisco Superior Court Case No. CGC-24-619618; *Salmeron Reyes v. ASN Natural Stone, Inc., et al.*, San Francisco Superior Court Case No. CGC-24-617927; *Fisher v. All Architectural Stone Corp., et al.,* San Francisco Superior Court Case No. CGC-25-625179*; Figueroa Ramirez v. 3M Company, et al.*, San Francisco Superior Court Case No. CGC-25-626854; *Reyes v. Integrated Resources Group, Inc.*, San Francisco Superior Court Case No. CGC-24-617972*; Serrano v. Antolini Luigi & C. S.P.A., et al.,* San Francisco Superior Court Case No. CGC-24-614333; *Salmeron v. AC Stone Group Pty. Ltd., et al.,* San Francisco Superior Court Case No. CGC-24-614256; *Zamora v. All Natural Stone Burlingame, Inc., et al.,* San Francisco Superior Court Case No. CGC-25-622349*; Zurita v. All Architectural Stone Corporation, et al.,* San Francisco Superior Court Case No. CGC-25-622938*;* and *Figueroa Lopez v. Architectural Surfaces Group, LLC, et al.*, San Francisco Superior Court Case No. CGC-24-611712.

[2] *De Los Santos v. 1605578 Ontario Inc., et al.*, Orange County Superior Court Case No. 30-2024-01392209-CU-TT-CXC; *Rios v. Aaroha Radiant Marble & Granite Slabs, et al.*, Orange County Superior Court Case No. 30-2025-01467451.

On August 22, 2025, EOS filed suit in the California Superior Court for Los Angeles County against Selective and three other insurers.[3] ECF No. 16-1. EOS's complaint brings claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and declaratory relief to determine the insurers' obligations under the various policies. *Id.* ¶¶ 3, 70–91. Instead of immediately serving its complaint, EOS sent Selective a letter demanding that Selective retract its denial of coverage by September 26, 2025, or else be served with the enclosed complaint and proceed with litigation. ECF No. 16-2 at 2–3, 7–8.

On September 24, 2025, Selective filed that complaint seeking declaratory judgment against EOS pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and this Court's diversity jurisdiction. ECF No. 1. Selective served the complaint on EOS on September 26, 2025. ECF No. 8. EOS moved to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Court should decline to exercise jurisdiction in light of the parallel state action. ECF Nos. 15 (motion), 16 (memorandum). The motion has been fully briefed and is ripe for disposition. ECF Nos. 17 (opposition), 18 (reply).

---

[3] EOS purchased commercial general liability policies from three other insurers—Peerless Indemnity Insurance Company, FCCI Insurance Company, and Does 1-50—that EOS contends should provide defense and indemnity in connection with the underlying lawsuits. ECF No. 16-1 ¶¶ 1–3.

## II.   LEGAL STANDARDS

### A.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A defendant may challenge subject matter jurisdiction "in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, the defendant may make a facial challenge in which he contends "'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Second, the defendant may challenge "the factual predicate of subject matter jurisdiction" by alleging that "'the jurisdictional allegations of the complaint are not true.'" *Id.* (quoting *Adams*, 697 F.2d at 1219) (alteration accepted).

"When a defendant makes a facial challenge to subject matter jurisdiction," the plaintiff is "afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration"—"the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192 (quotation marks and citation omitted). A motion to dismiss under Rule 12(b)(1) is an appropriate vehicle by which to move the court to abstain from exercising its jurisdiction in favor of a parallel state proceeding. *Saint Paul Fire & Marine Ins. Co. v. Lumber Liquidators, Inc.*, No. 1:18-cv-2820, 2018 WL 6075486, at *2 n.1 (E.D. Va. Nov. 16, 2018).

## B.   Jurisdiction Over Parallel Declaratory Judgment Actions

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides that district courts "may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). "[D]istrict courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). A declaratory judgment is appropriate when the "relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (citation and quotation marks omitted). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism," *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998), "even in advance of a judgment against the insured on the underlying claim for which coverage is sought," *Nautilus*, 15 F.3d at 376 (citations omitted).

With respect to parallel federal and state proceedings, the Supreme Court has held that a federal court's obligation to exercise federal jurisdiction is "virtually unflagging." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976). Under *Colorado River*, abstention is appropriate "[o]nly in the most extraordinary circumstances." *Gordon v. Luksch*, 887 F.2d 496, 497 (4th Cir. 1989). But "[i]n the declaratory judgment context, the normal principle that federal courts

6

should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995); *Nautilus*, 15 F.3d at 376 (When a parallel proceeding is pending in state court, federal courts must weigh "considerations of federalism, efficiency, and comity."). The Fourth Circuit has articulated four factors to inform a district court's decision whether to abstain from exercising jurisdiction when a parallel state action is pending:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol*, 155 F.3d at 493–94 (citing *Nautilus*, 15 F.3d at 377).

### C. Duty to Defend and Indemnify Under Virginia Law

"Under Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990). Generally, duty to defend questions "will not require the district court to resolve factual questions at all." *Id.* Instead, the district court "need only decide such coverage by comparing what [the state court plaintiff] has alleged in the state court action[s] with the language of the [provider's] insurance policy." *Id.* (emphasis omitted); *see also CACI Intern., Inc. v. St. Paul Fire & Marine Ins. Co.*, 566

F.3d 150, 155 (4th Cir. 2009) (Virginia follows the "Eight Corners Rule," which requires courts to compare the four corners of the complaint with the four corners of the insurance policy to determine coverage and "prevents courts from conducting an intensive factual analysis at an early stage of the proceedings."). "'[I]f it appears clearly that the insurer would not be liable under its contract for any judgment *based upon the allegations*'" in the underlying state court actions, there will be no duty to defend. *Id.* (quoting *Brenner,* 397 S.E.2d at 102).

In contrast, "an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint." *Penn-Am.*, 368 F. 3d at 413 (emphasis omitted). Of course, "no such factfinding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the policy's coverage." *Id.* (emphasis omitted). If there is a duty to defend and it is therefore necessary to make a duty to indemnify determination, "where there is an underlying state suit, the [district] court . . . must generally analyze the ultimate findings of fact in the underlying state suit once it is concluded, rather than making its own evidentiary findings in the first instance." *Builders Mut. Ins. Co. v. Futura Group, L.L.C.*, 779 F. Supp. 2d 529, 534 (E.D. Va. 2011) (collecting cases).

## III.    ANALYSIS

The Court must first determine whether parallel federal and state suits exist. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005) (citation and quotation marks omitted). "Suits need not be

identical to be parallel, . . . and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citations omitted). Instead, whether the suits are parallel turns on "whether there is a substantial likelihood that the [state] litigation will dispose of all the claims presented in the federal case." *Id.* (citation and quotation marks omitted).

Here, the parties and issues are substantially the same: both EOS and Selective seek, in different forums, resolution on the question of Selective's duty to indemnify and defend EOS against lawsuits in California under the terms of commercial general liability and umbrella policies. ECF No. 1 ¶¶ 1–4; ECF No. 16-1.[4] Although the two suits are not identical, as the state litigation involves two additional claims and three additional defendants, the state court action would dispose of the sole claim presented in this case. Accordingly, the Court finds that the state litigation constitutes a parallel proceeding—a matter the parties do not dispute. ECF No. 16 at 5; ECF No. 17 at 12–17 (arguing that the *Nautilus* factors weigh in favor of retaining jurisdiction, an analysis that is only reached when there are parallel federal and state actions).

---

[4] The Court takes judicial notice of the complaint EOS filed in California, which is a matter of public record. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). EOS also attached the California complaint to its motion to dismiss and Selective does not challenge its authenticity. *See Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Because the Court concludes that the California complaint is integral to the instant complaint, the Court will consider the California complaint when deciding this motion.

Next, a declaratory judgment in the instant case will "serve a useful purpose" by "clarifying and settling" Selective's obligations to EOS under the insurance policy. *Nautilus*, 15 F.3d at 375 (citation and quotation marks omitted). And a declaratory judgment "will terminate and afford relief from uncertainty, insecurity, and controversy" by "designat[ing] the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement." *Id.* at 375–76 (explaining that "[f]ederal declaratory judgment relief was intended to avoid precisely the accrual of avoidable damage to one not certain of his rights.") (citation and quotation marks omitted, alteration accepted).

Having determined that the principles underlying declaratory judgment actions are satisfied here, the Court next considers the four *Nautilus* factors, which require it to weigh issues of "federalism, efficiency, and comity" even when the relief requested would serve a useful purpose. *Nautilus*, 15 F.3d at 376. In doing so, the Court "remain[s] mindful that this form of abstention 'is an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it' and that '[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006) (quoting *Colorado River*, 424 U.S. at 813). Therefore, the Court's task "is not to find some substantial reason for the *exercise* of jurisdiction" but to "ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the *surrender* of that

jurisdiction." *Chase Brexton Health Servs.*, 411 F.3d at 463 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)). The Court concludes that no such circumstances exist here.

Regarding the first *Nautilus* factor, the Eastern District of Virginia has an interest in adjudicating this dispute, which involves the scope of coverage under an insurance policy issued in Virginia to an entity headquartered in Virginia, while applying Virginia law.[5] As the Eastern District of Virginia routinely addresses issues requiring application of Virginia law, it is particularly well suited to interpret and apply Virginia law. *See Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 451 (E.D. Va. 2006) (The Eastern District of Virginia "is accustomed to applying Virginia law in declaratory judgment actions.").

California, too, has a connection to this case, as the plaintiffs in the underlying suits against EOS are California residents who have filed suit in California's courts, but such connection does not equal—and certainly does not outweigh—the Eastern District's interest in adjudicating the relevant contractual coverage issue. A state's interest is strongest when applying its own law, *see Penn-Am.*, 368 F.3d at 414, particularly when the state law issues are "difficult or unsettled," *Nautilus*, 15 F.3d

---

[5] Applying Virginia's choice-of-law rules—as this Court must—Virginia law applies to the insurance contract at issue because the policy was "written and delivered" in Virginia. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Woodson v. Celina Mut. Inc. Co.*, 177 S.E.2d 610, 613 (Va. 1970) (a contract is interpreted under the law of the state in which the contract was formed, in the absence of the parties' express intention to the contrary); ECF No. 1 ¶ 11 (alleging that the insurance policy at issue was issued to EOS in Virginia).

at 378 (citation and quotation marks omitted). But California law does not apply to this contract dispute,[6] and the issues involved are not novel. *See State Farm Fire and Cas. Co. v. Thomas*, 217 F. 3d 840, 2000 WL 763612, at *2 (4th Cir. 2000) (unpublished) (district court did not abuse its discretion by declining to abstain in federal declaratory judgment action where "the issues of law presented [we]re not genuinely novel because they involve[d] standard principles of contract interpretation"); *Princeton Excess and Surplus Lines Ins. Co. v. Immigr. Ctrs. of Am. – Farmville, LLC*, No. 3:12-cv-895, 2013 WL 6246366, at *7 (E.D. Va. Nov. 21, 2013) (state interest not sufficiently compelling to justify abstention as interpretation of insurance policy "involve[d] merely 'the routine application of settled principles of law to particular disputed facts'") (quoting *Nautilus*, 15 F.3d at 378); *Med. Mut. Ins. Co. of N.C. v. Johnson*, No. 1:19-cv-1601, 2020 WL 6929056, at *7 (E.D. Va. Nov. 24, 2020) (state interest not sufficiently strong to justify abstention where claims involved "relatively straightforward issues of insurance contract interpretation") (quotation marks and citation omitted). Thus, the first factor does not support dismissing Selective's claim.

The second factor—whether California's courts could resolve the issues more efficiently—likewise militates in favor of this Court exercising jurisdiction. Critically,

---

[6] In California, "[a] contract is [] interpreted according to the law and usage of the place where it is to be performed," but "if [the contract] does not indicate a place of performance, [it is interpreted] according to the law and usage of the place where it [was formed]." Cal. Civ. Code § 1646. Although the underlying lawsuits are brought by California plaintiffs in California, the policy itself does not indicate a place of performance. Therefore, regardless of whether Virginia's or California's choice-of-law rules are applied, Virginia law will govern interpretation of the insurance policy.

the parallel California declaratory judgment action has not made progress since its filing and is presently stayed.[7] ECF No. 17-1 at 2. Thus, California's courts have made no more progress than this Court on the issues here. And although California's courts are no doubt capable of faithfully applying Virginia law, it cannot be said that they could resolve the instant dispute more efficiently than this Court.

Nor can the Court conclude that exercising its jurisdiction over this dispute would be a waste of judicial resources. The presence of additional defendants in a parallel state suit—as is the case here—and the risk that "an issue might be left for resolution in state court" can weigh in favor of abstention due to "the desirability of avoiding piecemeal litigation." *Sto Corp. v. Lancaster Homes, Inc.*, 11 F. App'x 182, 186, 188 (4th Cir. 2001) (unpublished); *Chase Brexton*, 411 F.3d at 463. But that is the case only where the exercise of federal jurisdiction "create[s] the possibility of inefficiencies and inconsistent results *beyond* those inherent in parallel litigation" or where the litigation is "particularly illsuited for resolution in duplicate forums."

---

[7] Selective represents that the California declaratory judgment action was "stayed pending an initial status conference scheduled for December 17, 2025." ECF No. 17 at 4. The order submitted to this Court confirms that that case was stayed "*at least until* the [i]nitial [s]tatus [c]onference . . . set for 12/17/2025." ECF No. 17-1 at 2. The official website for the Superior Court of California, County of Los Angeles indicates that the December 17, 2025 status conference was "not held – vacated by Court" and that an initial status conference was held on March 12, 2026. Superior Court of California, County of Los Angeles, Civil Case Access, https://www.lacourt.ca.gov/pages/lp/access-a-case/tp/find-case-information/cp/os-civil-case-access (last visited March 25, 2026). It appears to the Court that no significant actions, filings, or proceedings have otherwise transpired and that the stay has not been lifted. And the parties have not alerted the Court of any information to the contrary.

*Gannett Co. Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (emphasis added). Here, the parallel state suit seeks resolution of three additional defendant insurers' obligations to EOS under separate liability policies. Although the federal suit will not settle issues of the other insurers' liability, neither will a ruling by this Court on Selective's liability interfere with California's ability to resolve those issues separately and to determine allocation of costs as between all three insurers if necessary. Therefore, the presence of additional defendants in the parallel state suit does not justify abstention.[8]

As for the third *Nautilus* factor, because the parallel declaratory judgment suits mirror one another insofar as both seek resolution of Selective's obligations to EOS under the insurance policy, there are overlapping issues of fact and law. However, because the state suit has not made any progress and is presently stayed, resolution by this Court poses little to no risk of entanglement. Any speculative concern that the state court could lift its stay prior to this Court's resolution of the issues is insufficient alone to justify abstention. *See United Capitol*, 155 F.3d at 494

---

[8] The Court also notes the presence of two additional claims in the California suit. Whereas Selective asks only for declaratory relief against EOS, EOS additionally brings claims for breach of contract and tortious breach of the duty of good faith and fair dealing in the parallel California action. ECF No. 1; ECF No. 16-1 ¶¶ 70–84. But this Court's resolution of Selective's liability will not inhibit California's ability to resolve the breach of contract issue. In fact, this Court's determination of the liability issue will clearly inform the resolution of—if not dispose of—EOS's breach of contract claim against Selective. And EOS's claim for tortious breach of the duty of good faith and fair dealing presents no concerns because that claim is not available under Virginia law, which would be applied in either forum.

(analysis weighing in favor of abstention where entanglement was a "*genuine possibility.*") (emphasis added).

Additionally, a determination on the liability issue will not put at risk the state's ability to fairly adjudicate the underlying personal injury actions. Though certainly related, the coverage issue presented in Selective's declaratory judgment claim does not materially overlap with the issues presented in the underlying California lawsuits alleging bodily injury caused by EOS products. *See Nautilus*, 15 F.3d at 379–80 ("no significant overlap in the issues of fact that must be decided to resolve these two separate and independent legal controversies.") (citations omitted). Resolution of the duty to defend will only require this Court to determine whether the allegations of the underlying state court complaints, if proved, would bring the claim within the four corners of Selective's policies. *Penn-Am.*, 368 F. 3d at 413; *see Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 355 Fed. App'x 698, 702 (4th Cir. 2009) (unpublished) (no entanglement with the facts and issues in underlying state proceeding because liability determination by the district court "involve[d] the interpretation of contractual language and nothing more"). If there is no duty to defend, the Court will be able to resolve the indemnification issue without reaching ultimate factual determinations. *Antonelli*, 355 Fed. App'x at 702. And even if there is a duty to defend, the Court will be required to await the state court findings in the underlying lawsuits before determining whether there is a duty to indemnify. There is therefore no risk of this Court "reach[ing] final judgment before the state court" such that "resolution of [] common issues might be entitled to preclusive effect

in the [underlying] state action" and "frustrate the orderly progress" of the state court proceedings. *Nautilus*, 15 F.3d at 377. Consequently, this Court's exercise of its jurisdiction in this case will not create undue entanglement, and this prong militates against dismissal.

Regarding the fourth and final factor, it gives this Court some pause that Selective's "declaratory action was [potentially] filed in an effort to obtain a federal forum in a case not otherwise removable." *Nautilus*, 15 F.3d at 380; ECF No. 16 at 3 n.2. But both parties accuse one another of forum shopping, and it appears to the Court that there is likely some validity to both claims. Adjudication of the declaratory judgment action by a court situated in Virginia—whose law applies—may be preferable to Selective, whereas EOS might view California's adjudication of the coverage issue as advantageous to it. However, Selective's conduct does not appear to constitute the type of "procedural fencing" that the fourth *Nautilus* factor guards against. Because Virginia law is controlling in both forums, this Court's resolution of the issues will not result in Selective gaining any advantage that it would not have in state court. Accordingly, the fourth and final *Nautilus* factor is neutral.

Throughout its arguments for abstention, EOS emphasizes that it filed its parallel state court action first. ECF No. 16 at 1, 6, 8. But given the lack of progress in the state case and the appearance of forum shopping by both parties, the state action's one month seniority over the federal action does not tilt the scales in favor of abstention. *See Gannett Co.*, 286 F.3d at 747–48 ("The Supreme Court has emphasized that the order of filing should be viewed pragmatically, meaning that

16

'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'") (quoting *Moses H. Cone*, 460 U.S. at 21); *see also Colorado River*, 424 U.S. at 820 (concluding that abstention was appropriate even though the federal suit was filed first); *Kruse v. Snowshoe*, 715 F.2d 120, 124 (4th Cir. 1983) (district court did not abuse its discretion in declining to abstain where state and federal actions were filed within days of one another and similar progress had been made in each).

Given this Court's analysis of the *Nautilus* factors, particularly in light of the "virtually unflagging" obligation to exercise its jurisdiction, *Colorado River*, 424 U.S. at 817–18, the Court concludes EOS's motion to dismiss must be denied.

## IV.    CONCLUSION

Defendant EOS Surfaces LLC's motion to dismiss (ECF No. 15) is **DENIED**.

EOS is **DIRECTED** to respond to Selective's complaint within the time prescribed by the Federal Rules of Civil Procedure.[9]

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 26, 2026

---

[9] After the defendant files an answer to the complaint, the Court will direct the parties to reschedule the Fed. R. Civ. P. 16(b) conference.

17